**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rebecca C. Ruiz, | No. CV-18-0292-TUC-BGM |
| Plaintiff, | |
| v. | **ORDER** |
| Andrew M. Saul,[1] | |
| Acting Commissioner of Social Security, | |
| Defendant. | |

Currently pending before the Court is Plaintiff's Opening Brief (Doc. 18). Defendant filed his Responsive Brief ("Response") (Doc. 20), and Plaintiff filed her Reply (Doc. 21). Plaintiff brings this cause of action for review of the final decision of the Commissioner for Social Security pursuant to 42 U.S.C. § 405(g). The United States Magistrate Judge has received the written consent of both parties, and presides over this case pursuant to 28 U.S.C. § 636(c) and Rule 73, Federal Rules of Civil Procedure.

## I. BACKGROUND

### A. *Procedural History*

On March 5, 2014, Plaintiff filed a Title II application for Social Security Disability Insurance Benefits ("DIB") and a Title XVI application for Supplemental Security Income

---

[1] The Court takes judicial notice that Nancy A. Berryhill is no longer Acting Commissioner of the Social Security Administration ("SSA"). The Court will substitute the new Commissioner of the SSA, Thomas M. Saul, as Respondent pursuant to Rule 25(d) of the Federal Rules of Civil Procedure. *See also* Fed. R. App. P. 43(c)(2).

("SSI") alleging disability as of March 1, 2007 due to right shoulder pain; lower back pain, including bulging discs; right hip—bone on bone; right ankle weakness; insulin dependent diabetes; low blood platelet count; high blood pressure; dizziness; anxiety; and depression. *See* Administrative Record ("AR") at 27, 29, 67–68, 76–79, 82, 84, 90–91, 102–105, 121–22, 262, 296, 300, 323, 349. The Social Security Administration ("SSA") denied this application on September 4, 2014. *Id.* at 27, 76–101, 143–50. On October 15, 2014, Plaintiff filed a request for reconsideration, and on March 26, 2015, SSA denied Plaintiff's application upon reconsideration. *Id.* at 27, 102–37, 151–52. On May 22, 2015, Plaintiff filed her request for hearing. *Id.* at 27, 153–54. On January 25, 2017, a hearing was held before Administrative Law Judge ("ALJ") Laura Speck Havens. *Id.* at 27, 41–63. On June 8, 2017, Plaintiff appeared at a supplemental hearing before ALJ Havens. AR at 27, 64–75. At the supplemental hearing, Plaintiff moved to amend her onset date to March 5, 2014 and to withdraw her Title II claim. *Id.* at 67–68. On July 3, 2017, the ALJ amended Plaintiff's onset date to March 5, 2014, dismissed her Title II claim, and issued an unfavorable decision. *Id.* at 24–34. On August 28, 2017, Plaintiff requested review of the ALJ's decision by the Appeals Council, and on May 15, 2018, review was denied. *Id.* at 1–4, 245–49. On June 11, 2018, Plaintiff filed this cause of action. Compl. (Doc. 1).

### B. *Factual History*

Plaintiff was forty-five (45) years old at the time of the administrative hearings, as well as at the time of the alleged onset of her disability. AR at 27, 29, 33–34, 45, 67–68, 76–77, 90, 102–104, 121, 173, 201, 218, 230, 251, 262, 296, 323, 349. Plaintiff obtained a high school equivalent education (GED). *Id.* at 33, 76–77, 102–103. Prior to her alleged disability, Plaintiff worked in as a caregiver and convenience store cashier; however, the ALJ determined Plaintiff lacked substantial gainful activity. *Id.* at 29, 48, 302, 319.

#### 1. Plaintiff's Testimony

##### a. Administrative Hearing

###### i. *January 25, 2017*

At the administrative hearing, Plaintiff testified that she obtained a GED. AR at 45.

Plaintiff further testified that she is able to read, but was equivocal about her ability to do simple adding and subtracting. *Id.* Plaintiff testified that she previously worked as a companion through an agency for between ten (10) and fifteen (15) hours per week. *Id.* at 46–47. Plaintiff further testified that she had to stop working because she could no longer do the work. *Id.* at 47. Plaintiff also testified that she lives in a house with three (3) of her four (4) daughters. *Id.* at 48. Plaintiff testified that she wakes up at approximately 11:00 a.m. and for the past year she has required help getting out of bed, showering, and getting dressed. AR at 48. Plaintiff further testified that she does not do any household chores, such as cooking, washing dishes, cleaning floors, or doing laundry. *Id.* at 49. Plaintiff testified that she shops for groceries if she is up to it, but estimates that ninety-five (95) percent of the time her daughters do the chores. *Id.* at 49. Plaintiff further testified that prior to the onset of her disability, she was able to do more, including all of the chores. *Id.*

Plaintiff described her typical day as getting up, showering, and dressing with her daughter's help, followed by sitting in the kitchen for awhile before returning to bed. *Id.* at 50. Plaintiff noted that if she needs to use the restroom during the day, her daughter helps her get up. AR at 50. Plaintiff testified that prior to her health decline, she was able to walk everywhere, get up, dress herself, and take care of her children. *Id.* at 50–51. Plaintiff further testified that she was able to walk approximately three (3) blocks before taking a thirty (30) minute break before getting up and going again. *Id.* at 51. Plaintiff admitted to using cocaine when her parents passed away. *Id.* at 51–52. Plaintiff testified that she does not drive a car having stopped in approximately 2013. *Id.* at 52. Plaintiff testified that she does not go out socially and sleeps approximately five (5) hours per night on average. AR at 52. Plaintiff listed her current medications as two types of insulin, metoprolol for her heart rate, blood pressure medicine, cholesterol medicine, monophines [sic], and lorazepam. *Id.* at 53. Plaintiff described the medication side effects as including drowsiness, sleepiness, and an inability to function. *Id.*

Plaintiff testified that she can walk or stand for approximately five (5) to ten (10) minutes and can sit for approximately twenty (20) minutes. *Id.* Plaintiff further testified

that she cannot lift her granddaughter who is approximately twenty-five (25) pounds. *Id.*
at 54. Plaintiff also testified that she has constant lower back pain, rating it as seven (7)
out of ten (10). AR at 54. Plaintiff testified that she suffers from depression and anxiety,
but is not receiving mental treatment, rather she receives pain medication for her anxiety.
*Id.*

Plaintiff further testified that she had initially applied for disability benefits in 2013
because she had hurt her back and hip. *Id.* at 55. Plaintiff also testified that she worked
three (3) days per week in 2014 because she could not tolerate more due to her pain. *Id.* at
55–56. Plaintiff described that she has "blood issues" and frequently gets dizzy and falls.
*Id.* at 56–58. Plaintiff also testified that she goes to the urgent care once or twice per month
for her pain—not to receive additional pain medication, but to ensure that nothing has
gotten worse. AR at 57. Petitioner testified that she has trouble with her sinuses, as well.
*Id.* Plaintiff further testified that she had not sought mental health help because she was
on "too much medication." *Id.* at 58.

### ii. June 8, 2017

At the supplemental administrative hearing, Plaintiff testified that her condition has
gotten worse. AR at 68. Plaintiff further testified that her hip pain has increased and she
had surgery on her foot because of Methicillin-resistant Staphylococcus aureus ("MRSA")
that she had contracted as a result of an infection related to her diabetes. *Id.* at 69. Plaintiff
also testified that her depression has also increased. *Id.*

### b. Administrative Forms

#### i. Function Report—Adult

On June 13, 2014, Plaintiff completed a Function Report—Adult in this matter. AR
310. Plaintiff reported that she lived in a house with family. *Id.* Plaintiff described her
medical conditions as follows:

> Can't sit longer than 20-30 minutes. Can't stand longer than 20-30 minutes.
> Have to lay down 2-3x a day due to severe back pain. Very limited in
> physical activity[,] can only do chores – dishes, putting a load of laundry in
> for 10-15 minutes before having to sit down. If sugars are not right[,] get

really dizzy.

*Id.* Plaintiff described her typical day as waking up and going to work for four (4) hours per day. *Id.* at 311. Plaintiff reported that she is able to lay down and take breaks as needed while working, and then goes home and is in bed for the remainder of the day. *Id.* Plaintiff further reported that she does minimal chores, watches an elderly woman, and watches any kids at her home. AR at 311. Plaintiff noted that her children do a lot of the chores, because she cannot, but that she will give pets food and water if it is not already done. *Id.* Plaintiff reported that prior to her conditions, she was a very active mother who worked full time. *Id.*

Plaintiff noted that she is awoken every couple of hours due to severe pain and constant discomfort. *Id.* Plaintiff described her clothing choices as "[v]ery simple easy to put on" and having "to rest in the middle of [getting dressed.]" *Id.* Plaintiff reported that she wears her hair in ponytails or otherwise uses minimal care. AR at 311. Plaintiff further reported that she does not need special reminders to take care of personal needs or to take her medication. *Id.* at 312. Plaintiff also reported that she could cook pre-cooked meals, sandwiches, or TV dinners, and does so once or twice per week. *Id.* Plaintiff reported that cooking takes her no more than a maximum of thirty (30) minutes, whereas prior to the onset of her conditions she was able to cook complete meals for her family. *Id.* Plaintiff described fatigue, exhaustion, and severe pain as limiting her ability to cook. *Id.*

Plaintiff further reported that she does some dishes and one (1) or two (2) loads of laundry for between ten (10) and fifteen (15) minutes, two (2) to three (3) times per week. AR at 312. Plaintiff reported that her family helps her with these tasks. *Id.* Plaintiff indicated that she goes outside daily, either in a car or using public transportation. *Id.* at 313. Plaintiff further reported that she cannot drive regularly due to her anxiety and chronic pain. *Id.* Plaintiff also reported that she shops in stores for groceries once or twice per month for approximately one (1) to two (2) hours, including breaks. *Id.*

Plaintiff noted that she can pay bills, count change, handle a savings account, and use a checkbook or money orders. AR at 313. Plaintiff described her hobbies as spending

time with her children and reading. *Id.* at 314. Plaintiff reported that she tried to do these things daily, but noted that she can no longer go on long walks due to her pain and discomfort. *Id.* Plaintiff indicated that she talks with her children and boyfriend daily, as well as watching television. *Id.* Plaintiff further reported that she goes to work daily and doctor appointments two (2) to three (3) times per month. *Id.* Plaintiff again noted that she used to work full time and was very active with her children's school, as well as at home. AR at 315. Plaintiff indicated that her conditions affect her ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, complete tasks, and use her hands. *Id.* Plaintiff stated that she cannot lift more than ten (10) pounds; squat; kneel; or use her hands, because she loses her grip. *Id.* Plaintiff reported that she can walk for one-half of a block and then must rest for ten (10) to twenty (20) minutes before continuing. *Id.* Plaintiff also reported that although she does not have trouble with written instructions or authority figures, she needs reminders regarding spoken instructions. *Id.* at 315–16. Plaintiff further reported that stress causes her pain to flare-up, and changes in routine take all of her energy. AR at 316. Plaintiff noted that her diabetes is "super out of control" and causes dizziness and faintness. *Id.* at 317.

On February 11, 2015, Plaintiff completed a second Function Report—Adult. *Id.* at 341–48. Plaintiff again noted that she lived in a house with family. *Id.* at 341. Plaintiff reported that she is unable to be on her feet too long before they start to hurt, and she takes a lot of medication "at all hours of the day." *Id.* Plaintiff described her day as spending most of the time in bed. AR at 342. Plaintiff further reported that her daughter cared for their pets. *Id.* Plaintiff indicated that prior to her conditions she was able to do "everything," including hanging out with friends and family. *Id.* Plaintiff reported that she is up most of the night with pain. *Id.*

Plaintiff further reported that she needs reminders to shower, and her boyfriend reminds her to take her medicine. *Id.* at 343. Plaintiff noted that she does not prepare meals, because it is too much for her to handle. AR at 343. Plaintiff also reported that she washes dishes and folds laundry for forty-five (45) minutes to an hour. *Id.* Plaintiff

indicated that she does not do other house or yard work due to the limitations her pain causes. *Id.* at 344. Plaintiff reported going out two (2) to three (3) times per week either riding in a car or using public transportation, and noted that she does not drive due to pain and dizziness. *Id.* Plaintiff further reported constantly falling and needing help with insulin injections. *Id.*

Plaintiff reported that she grocery shops once per month for approximately three (3) hours. AR at 344. Plaintiff confirmed that she can pay bills, count change, handle a savings account, and use a checkbook or money orders. *Id.* Plaintiff noted that she becomes frustrated because she misplaces things. *Id.* at 345. Plaintiff described her hobbies as sleeping and watching television, which she does daily. *Id.* Plaintiff denied spending time with others, and needing reminders to go places, as well as someone to go with her. *Id.* Plaintiff further reported that her conditions cause irritation and she does not participate in family functions. AR at 346. Plaintiff indicated that she can walk for approximately ten (10) minutes before needing to stop and rest for between twenty (20) and thirty (30) minutes. *Id.* Plaintiff reported that she finishes what she starts and is generally able to follow both written and spoken instructions. *Id.* Plaintiff further reported that she gets along with authority figures, but does not handle stress or changes in routine well. *Id.* at 347. Plaintiff noted that she also feels depressed and angry. *Id.*

### ii. Work History Report

On June 13, 2014, Plaintiff also completed a Work History Report. AR at 319–22. Plaintiff listed her prior work experience as including being a caregiver and a cashier or store clerk. *Id.* at 319. Plaintiff described the caregiver position as staying with an elderly woman and feeding her through a tube. *Id.* at 320. Plaintiff reported that the job did not require the use of machines, tools, or equipment, but did require technical knowledge or skills, as well as writing or completing reports or similar duties. *Id.* Plaintiff further reported that while working as a caregiver she walked; stood; climbed; stooped; kneeled; crouched; crawled; handled, grabbed, or grasped large objects; reached; and wrote, type, or handled small objects for approximately two (2) hours per day. *Id.* Plaintiff noted that

she sat for approximately three (3) hours per day and the job did not entail any lifting. AR at 320. Plaintiff described the position as requiring her to lift less than ten (10) pounds frequently, and that this was also the heaviest weight she lifted. *Id.*

Plaintiff described her position of store clerk as keeping the store clean, greeting customers, balancing the register, and making sure all shelves were stocked. *Id.* at 321. Plaintiff reported that she used machines, tools, or equipment for this position, as well as technical knowledge or skills, and wrote or completed reports, or performed other similar duties. *Id.* Plaintiff further reported that the position required her to walk and stand for approximately six (6) hours per day; climb, stoop, crouch, and crawl for approximately two (2) hours per day; and sit, kneel, handle, grab, or grasp big objects, reach and write, type, or handle small objects for approximately one (1) hour per day. *Id.* Plaintiff also reported that she lifted and carried boxes of product to and from shelves. AR at 321. Plaintiff indicated that she would frequently lift ten (10) pounds, and the heaviest weight she lifted was twenty (20) pounds. *Id.* Plaintiff reported that she was a lead worker. *Id*. Plaintiff explained that she worked off and on at Circle K, quit to raise her daughter, and never returned due to the deterioration of her health. *Id*. at 322.

### iii. Disability Report—Appeal

Plaintiff had a Disability Report—Appeal completed indicating that she was "further limited in her ability to stand, sit upright, [and] [could not] reach at all with [her] [left] shoulder." AR at 325. Plaintiff further reported that her depression and pain continued to worsen. *Id.* Plaintiff also noted that she required frequent rest due to an increase of fatigue resulting from "a combination of a high medication regimen and chronic, severe, and worsening pain." *Id.* Plaintiff indicated that she could not complete chores, get dressed, or make food without either assistance or several rest periods. *Id.*

. . .

. . .

. . .

. . .

- 8 -

## 2. **Plaintiff's Medical Records**

### a. **Treatment records**[2]

On March 22, 2013, Plaintiff underwent an abdominal ultrasound. AR at 593. Jack Porrino, M.D.'s impression included hepatomegaly with a "[c]oarsened and nodular hepatic echotexture is highly suspicious for underlying diffuse hepatocellular disease/cirrhosis." *Id.* Dr. Porrino further observed a nine (9) millimeter lesion within the right lobe of the liver with features typical for a hepatic hemangioma, but recommended further study to exclude alternative etiologies. *Id.* On April 17, 2013, Plaintiff was seen by Guillermo Gonzalez-Osete, M.D. for an evaluation regarding thrombocytopenia. *Id.* at 417–19, 618–20. Treatment records indicate that Plaintiff had blood work that indicated a low platelet count, but she denies any bleeding, bruising, or nosebleeds. *Id.* at 417–18, 618–19. Dr. Gonzalez-Osete opined that Plaintiff's thrombocytopenia did not require immediate treatment, but that it would be appropriate to try and determine its cause. AR at 418, 619.

On May 8, 2013, Plaintiff followed-up with Dr. Gonzalez-Osete regarding her thrombocytopenia. *Id.* at 414–16, 615–17. Treatment records indicated Plaintiff's medications included metformin, glipizide, NovoLog, Lantus, pravastatin, aspirin, oxycodone, lisinopril, and lorazepam. *Id.* at 414, 615. Dr. Gonzalez-Osete reviewed an ultrasound of Plaintiff's liver and noted that it was enlarged and demonstrated a nodular echotexture. *Id.* Dr. Gonzalez-Osete opined that "[t]he hepatomegaly and the nodular pattern are suspicious for diffuse hepatocellular disease/cirrhosis." *Id.* Dr. Gonzalez-Osete also noted "a small 9-mm lesion in the right lobe that is suspicious for a hemangioma." AR at 414, 615. Dr. Gonzalez-Osete further opined that Plaintiff's thrombocytopenia was mild and did not require treatment. *Id.* at 414–15, 615–16.

---

[2] As noted, *supra*, Plaintiff moved to amend her onset date to March 5, 2014 and to withdraw her Title II claim. *Id.* at 67–68. On July 3, 2017, the ALJ amended Plaintiff's onset date to March 5, 2014, dismissed her Title II claim, and issued an unfavorable decision. *Id.* at 24–34. Additionally, on March 6, 2013, Plaintiff applied for disability and on July 8, 2013, this application was denied. *Id.* at 91. The Court has reviewed the entirety of Plaintiff's medical records; however, with limited exception, only those after her alleged onset date are summarized here.

On August 26, 2013, Plaintiff returned to see Dr. Gonzalez-Osete for a follow-up regarding her thrombocytopenia. *Id.* at 412–13, 612–14. Plaintiff denied any bleeding, bruising, or petechiae. *Id.* at 412, 612. Dr. Gonzalez-Osete assessed that Plaintiff's thrombocytopenia was secondary to cirrhosis and noted her increased risk for hepatocellular carcinoma. *Id.* Plaintiff's thrombocytopenia remained mild and untreated. AR at 413, 613. On January 31, 2014, Plaintiff was seen by Dr. Gonzalez-Osete.[3] *Id.* at 411.

On March 9, 2014, Plaintiff presented to the Carondelet Health Network Emergency Department at St. Mary's Hospital complaining of pelvic pressure and blood when wiping after urination. *Id.* at 440–47. David A. Boswell, M.D. evaluated Plaintiff, reviewed her laboratory studies, and found "her symptoms and diagnostic studies [were] consistent with [a Urinary Tract Infection]." *Id.* at 441. Dr. Boswell prescribed Keflex and Pyridium and discharged Plaintiff home. *Id.* On March 10, 2014, 2014, Plaintiff was seen by Annette Hernandez-Parkhurst, M.D. at El Rio Community Health Centers regarding her pelvic pain. AR at 580–83. Dr. Hernandez-Parkhurst's examination was generally unremarkable except for small genital ulcers. *Id.* at 582. Cultures were collected for herpes and chlamydia testing. *Id.* On March 14, 2014, Plaintiff underwent mammography screening, which was negative for malignancy. *Id.* at 843.

On April 11–12, 2014, Plaintiff presented to the Carondelet Health Network Emergency Department at St. Mary's Hospital reporting nausea, vomiting, and diarrhea after eating a hamburger from Circle K. *Id.* at 432–439, 976–79. Amy H. Vinik, PA-C's impression indicated "[p]robable food poisoning with nausea, vomiting and diarrhea which has resolved spontaneously." AR at 433. Plaintiff was discharged and directed to follow-up with her primary care doctor in the following two (2) to three (3) days. *Id.* On April 25, 2014, Plaintiff saw Ida M. Heath, RNP at Healthcare Southwest, Inc. for pain management. *Id.* at 1209. Plaintiff reported her pain as a six (6) out of ten (10) and

---

[3] This record is incomplete and does not provide information beyond the fact of Plaintiff being seen.

indicated that she fell in mid-March, injuring her right ankle. *Id.* Plaintiff also reported increased anxiety due to family issues. *Id.* NP Heath observed tenderness in Plaintiff's right shoulder, right ankle, and lower back and hip. AR at 1209.

On May 12, 2014, Plaintiff was seen by Michelle Meyer, M.D. at El Rio Community Health Center for right eye pain and a cough. *Id.* at 550–54. Dr. Meyer assessed a stye and gave Plaintiff eye ointment, as well as cough medication for her cough. *Id.* at 553. Dr. Meyer's examination was otherwise unremarkable. *Id.* at 553–54. On May 28, 2014, Plaintiff saw NP Heath at Healthcare Southwest for pain management. *Id.* at 1208. Plaintiff reported working as a private duty caretaker. AR at 1208. NP Heath observed shoulder tenderness, low back tenderness at L5-S1 and the right paraspinals, and right hip tenderness over the greater trochanter. *Id.* Plaintiff also reported that her pain medications worked well. *Id.*

On June 25, 2014, Plaintiff was seen by NP Heath at Healthcare Southwest for pain management. *Id.* at 791, 1155, 1213. Plaintiff reported "[e]njoy[ing] being back to work as a caregiver[,] walks to and from bus stop to go to work . . . [s]tretches back in morning every day from paper given here[,] but . . . is finding that she has more pain in [right] shoulder and back since she started working." *Id.* NP Heath noted tenderness in Plaintiff's right shoulder, lower back, and right hip. AR at 791, 1155, 1213. NP Heath diagnosed lower back pain with pain into right leg due to disc protrusion and impingement of the L5 nerve root, right hip pain with minimal degenerative changes, right shoulder pain with mild degenerative changes, anxiety, and smoking cessation. *Id.*

On August 7, 2014, Plaintiff was seen by Nikki G. Nakovic, NP at El Rio Community Health Center regarding musculoskeletal pain and diabetes. *Id.* at 768–73. Specifically, Plaintiff complained of left shoulder pain. *Id.* at 768. NP Nakovic's examination was generally unremarkable, noting tenderness over Plaintiff's left supraspinatus tendon only. *Id.* at 771. Plaintiff was referred to physical therapy. *Id.* at 772. On August 25, 2014, Plaintiff saw NP Heath for pain management. AR at 1206. NP Heath noted that Plaintiff walked without difficulty; had tenderness over the coracoid

process of her left shoulder but with intact range of motion; and tenderness on her spine from L2-coccyx. *Id.* NP Heath increased Plaintiff's Morphine Sulfate Extended Release and decreased her Oxycodone immediate release to improve Plaintiff's long term pain relief. *Id.*

On September 11, 2014, Plaintiff returned to NP Nakovic regarding her shoulder pain and diabetes. *Id.* at 762–67. NP Nakovic's examination of Plaintiff was generally unremarkable noting continued joint tenderness. *Id.* at 762, 764. Plaintiff was urged to make a physical therapy appointment. AR at 766. On September 25, 2014, Plaintiff saw NP Heath at Healthcare Southwest for pain management. *Id.* at 1205. Plaintiff reported having decreased her work hours due to fatigue. *Id.* Treatment records indicated that NP Heath's notes regarding this visit were destroyed or taken by Drug Enforcement Agency ("DEA") agents. *Id.*

On October 2, 2014, Plaintiff had a Telemed evaluation by Jonathan Strohl, BHP, NP at COPE Community Services. *Id.* at 672, 677–715. Plaintiff reported poor motivation and depression. AR at 672. NP Strohl reported Plaintiff's appearance as appropriate; her concentration, insight, and judgment as fair; affect was anxious; her speech was normal; mood was anxious and depressed; and she denied delusions, hallucinations, and homicidal or suicidal ideas, intent or plan. *Id.* NP Strohl's diagnostic impression noted that Plaintiff "has depression and anxiety worsened by financial woes and long term use of pain medication." *Id.* NP Strohl further noted Plaintiff's global assessment of function ("GAF") score as 58. *Id.* On October 23, 2014, Plaintiff saw NP Heath for pain management. *Id.* at 1154, 1207. Plaintiff reported that she was traveling to Houston the following day to visit family and that Zoloft "ha[d] made a big difference in [her] mood." AR at 1154, 1207. NP Heath observed that Plaintiff walked without difficulty; had tenderness in her right hip on palpation but range of motion was intact; had lower back tenderness from L4-S1; and had left shoulder tenderness over the coracoid process to mid clavicle but range of motion was intact. *Id.* NP Heath left Plaintiff's medication regimen unchanged. *Id.*

On November 4, 2014, Plaintiff had a Telemed appointment with NP Strohl at

COPE Community Services, Inc. for evaluation and management. *Id.* at 670–71, 673–76. Plaintiff reported being "much less anxious and depressed since starting Zoloft." *Id.* at 670. NP Strohl's examination was generally unremarkable. AR at 670. NP Strohl assessed Plaintiff with major depressive disorder, recurrent episode, mild degree and reported her global assessment of functioning ("GAF") score as 55. *Id.* at 671. NP Strohl further noted Plaintiff's global risk assessment as low—one stable chronic illness, such as well controlled depression. *Id.* On November 18, 2014, Plaintiff was seen by Victor L. Herrera, PT at Ideal Physical Therapy regarding joint pain involving her shoulder region. *Id.* at 799–800. Treatment records indicated that Plaintiff reported "feeling much better since starting PT and feels she has reached her goals at this time[,] [s]he is able to sleep and perform ADLs with no issues and feels she can cont. on her own with her [home exercise program.]" *Id.* at 799. Plaintiff's range of motion was recorded within normal limits. AR at 799. PT Herrera assessed an improved range of motion and strength without increased pain. *Id.* at 800. PT Herrera further noted that Plaintiff "currently presents with no functional limitations in regards to her [left] shoulder at this time." *Id.* On November 20, 2014, Plaintiff saw Sophia Lonergan, NP at Healthcare Southwest for pain management. *Id.* at 1153, 1203. Plaintiff complained of sharp and throbbing lower back pain into her right hip and down her leg, as well as pain in her left shoulder. *Id.* Plaintiff further reported her pain was a seven (7) out of ten (10). AR at 1153, 1203 NP Lonergan advised continuance of daily routine and exercise. *Id.*

On December 18, 2014, Plaintiff saw NP Lonergan regarding pain management. *Id.* at 1151–52, 1201–02. Plaintiff reported that her pain was an eight (8) out of ten (10) with the cold weather. *Id.* Plaintiff further reported daily anxiety. *Id.* NP Lonergan found Plaintiff's lumbar spine, shoulders, and right hip to be tender to the touch. AR at 1151–52, 1201–02. NP Lonergan advised Plaintiff to continue her daily routine and exercise and recommended icing and placing a heating pad on affected areas. *Id.*

On January 22, 2015, Plaintiff was seen at Northwest Urgent Care at Speedway regarding neck and back pain. *Id.* at 869–77. Plaintiff was diagnosed with a muscle strain

and prescribed baclofen. *Id.* On January 26, 2015, Plaintiff was seen by Lynn Helseth, M.D. at El Rio Community Health Center regarding neck pain. AR at 717–20, 756–61. Dr. Helseth assessed cervicalgia, myalgia, and myositis, as well as uncontrolled Type II diabetes. AR at 717, 760. Dr. Helseth directed Plaintiff to continue baclofen, heat, ice, and chronic pain medications; gently stretch the affected area two (2) to three (3) times per day; and referred her to physical therapy. *Id.* On January 27, 2015, Plaintiff saw NP Nakovic at El Rio regarding her diabetes and musculoskeletal pain in her right flank. *Id.* at 721–24, 750–55. NP Nakovic's examination of Plaintiff was generally unremarkable, except her blood sugar was 430 requiring an insulin injection. *Id.* at 723, 753.

On February 12, 2015, Plaintiff saw NP Lonergan for pain management. *Id.* at 1199. Plaintiff reported a sprained neck and lower back pain that stabbed and burned into her right leg. *Id.* LP Lonergan reported tenderness in Plaintiff's lumbar and cervical spine. *Id.* NP Lonergan did not make any changes to her recommended treatment. *Id.* On February 17, 2015, Plaintiff had an abdominal ultrasound. *Id.* at 775. Sachin H. Shroff, M.D. reported hepatomegaly with "coarsened and nodular appearance of the liver again noted suggesting diffuse hepatocellular disease/cirrhosis[,] [and] [p]reviously seen lesion in the liver not identified on the current study." *Id.* Dr. Shroff also noted borderline splenomegaly and no ascites. AR at 775. The study was otherwise negative. *Id.* On the same date, Plaintiff had a transvaginal pelvic ultrasound regarding right flank pain. *Id.* at 776. Dr. Shroff found no significant pelvic abnormality. *Id.* On February 23, 2015, Plaintiff was seen by Maureen Storer, PT at Ideal Physical Therapy regarding neck pain and morning stiffness. *Id.* at 795–96. PT Storer noted that Plaintiff had a "palpable muscle spasm in the Upper Trap[ezius] and Levator region with pin in the cervical paraspinals and sub-occipital region." AR at 795. PT Storer further noted that her findings were "consistent with cervical muscle strain." *Id.* at 796. PT Storer's treatment plan included heat, E-Stim, and exercises to improve Plaintiff's range of motion and decrease her pain. *Id.* On February 27, 2015, Plaintiff was seen by Aleksandra Maric, M.D. at El Rio Community Health Clinic regarding her diabetes mellitus and musculoskeletal pain. *Id.* at

743–49. Plaintiff reported that her right hip pain was intermittent and currently stable. *Id.* at 743. Treatment records indicated that Plaintiff's diabetes was diagnosed in 2010. AR at 743. Plaintiff's examination was unremarkable. *Id.* at 743–49. Radiographs of Plaintiff's right hip, taken on the same date, were radiographically negative. *Id.* at 774. On February 30, 2015, Plaintiff saw NP Lonergan for pain management. *Id.* at 1193. Plaintiff complained of right hip and groin pain, neck pain, and lower back pain. *Id.* NP Lonergan noted tenderness in each of these areas, as well as stiffness and muscle spasms in Plaintiff's neck. AR at 1193. NP Lonergan increased Plaintiff's extended release morphine prescription. *Id.*

On March 8, 2015, Plaintiff was seen by Robert K. Johnson, M.D. at Northwest Medical Center, Speedway Urgent Care for sinusitis and bronchitis. *Id.* at 1494–1503. Dr. Johnson diagnosed sinusitis and an upper respiratory infection and prescribed an antibiotic and cough suppressant. *Id.* at 1497. On March 9, 2015, Plaintiff was seen by Dr. Hernandez-Parkhurst for a well-woman exam, which was unremarkable. *Id.* at 738–42. On March 12, 2015, Plaintiff saw NP Lonergan for pain management. AR at 738–42. Plaintiff reported neck pain, lower back pain, and right leg pain. *Id.* NP Lonergan reported tenderness without redness or swelling of Plaintiff's cervical neck, lower back, and right leg. *Id.* NP Lonergan did not make any changes to her recommendations, although appears to have provided two (2) week prescriptions. *Id.* On the same date, Plaintiff had a uranalysis in keeping with her pain management treatment. *Id.* at 1178. Plaintiff tested positive for morphine, as expected, but negative for a different morphine compound, oxycodone, and Ativan. AR at 1178. The negative results indicated Plaintiff was not taking the prescribed medication. *Id.* On March 25, 2015, Plaintiff was seen by Lisa Prososki, PA at Northwest Medical Center, Speedway Urgent Care regarding an abscess on her left lower extremity. *Id.* at 1484–93. PA Prososki diagnosed an abscess and cellulitis. *Id.* at 1487. PA Prososki did not incise and drain the abscess, but prescribed antibiotics. *Id.*

On April 9, 2015, Plaintiff saw NP Lonergan for pain management. AR at 1197.

NP Lonergan noted that she provided Plaintiff a two (2) week prescription, and there was no change. *Id.* On April 10, 2015, Plaintiff was seen by Joseph Alvarado, M.D. at Northwest Medical Center, Speedway Urgent Care regarding a cough. *Id.* at 1475–82. Dr. Alvarado diagnosed diabetes mellitus type II, without mention of complication or stated as uncontrolled, allergic rhinitis, and acute sinusitis. *Id.* at 1478. Dr. Alvarado prescribed an antibiotic and cough suppressant. *Id.* On April 15, 2015, Plaintiff saw NP Lonergan for pain management. AR at 1200. Plaintiff complained of a steady, achy pain in her lower back, right shoulder, and right hip. *Id.* NP Lonergan did not note any tenderness, redness, or swelling in Plaintiff's lumbar spine. *Id.* Plaintiff was scheduled for physical therapy for her shoulder. *Id.* NP Lonergan did not make any changes to her recommended treatment. *Id.* On the same date, Plaintiff had a uranalysis which indicated positive results, as expected, for morphine, benzodiazepines, and oxycodone. AR at 1177. On April 23, 2015, Plaintiff saw NP Lonergan for pain management. *Id.* at 1196. NP Lonergan provided Plaintiff a two (2) week prescription and noted no other changes. *Id.* Plaintiff also underwent a uranalysis on the same date, that showed positive results for morphine, benzodiazepines, and oxycodone, as expected. *Id.* at 1161.

On May 7, 2015, Plaintiff saw NP Lonergan for pain management. *Id.* at 1195. Plaintiff complained of lower back pain and mid back spasms; neck stiffness with popping and grinding; shoulder soreness; and right hip and leg pain. AR at 1195. NP Lonergan noted tenderness in each of these areas. *Id.* NP Lonergan did not make any new treatment recommendations. *Id.* On May 19, 2015, Plaintiff was seen by Misty Colvin, M.D. at Northwest Medical Center, Speedway Urgent Care regarding sinusitis and cerumen impaction. *Id.* at 1465–74. Dr. Colvin's examination was unremarkable. *Id.* Dr. Colvin removed the cerumen from Plaintiff's left ear and noted that her tympanic membrane and canal were normal following removal. AR at 1468. Dr. Colvin diagnosed acute sinusitis, not otherwise specified, and prescribed antibiotics and a cough suppressant. *Id.*

On June 2, 2015, Plaintiff was seen by Dr. Johnson at Northwest Medical Center, Speedway Urgent Care regarding pain after a fall. *Id.* at 1456–64. Plaintiff reported a

moderate degree of pain in her left, anterior, lateral, upper chest after a fall down some stairs at a friend's house. *Id.* at 1457. Dr. Johnson noted marked tenderness over Plaintiff's left posterior lateral chest wall, and mild tenderness over her thoracic spine, as well as her lumbosacral region. *Id.* at 1459. Dr. Johnson diagnosed chest wall pain and injury and discharged Plaintiff with instructions for treating a rib contusion. AR at 1459. On June 3, 2015, Plaintiff had radiographs of her right hip taken due to increased pain after a fall. *Id.* at 914. Todd Lessie, M.D. found "[s]ubtle subchondral cysts within the lateral aspect of the right femoral head suggest[ing] early degenerative arthropathy[,] [with] [n]o joint space narrowing appreciated." *Id.* Bone density, soft tissues, and osseous alignment were normal. *Id.* On June 21, 2015, Plaintiff was seen by Rachael Gates, D.O. at Northwest Medical Center, Speedway Urgent Care for a cough. *Id.* at 1447–55. Dr. Gates's physical examination of Plaintiff was generally unremarkable. AR at 1447–55. Dr. Gates diagnosed a sore throat and bronchitis, and prescribed a cough suppressant. *Id.* at 1450.

On July 2, 2015, Plaintiff saw NP Lonergan for pain management. *Id.* at 1194. Plaintiff complained of hip pain that traveled to her groin and reported that she had been to the Emergency Department regarding her neck pain. *Id.* NP Lonergan noted that Plaintiff had tenderness over her lumbosacral and cervical spine, as well as over her right groin and hip. *Id.* NP Lonergan did not make any recommendations or alterations to treatment. AR at 1194. On July 7, 2015, Plaintiff saw NP Nakovic at El Rio Community Health Center regarding her hip pain and diabetes. *Id.* at 900–04. Plaintiff complained of limping and tenderness. *Id.* at 900. NP Nakovic's examination was generally unremarkable, but noted that Plaintiff was "[p]oorly conditioned overall[,] [u]nable to reproduce [symptoms] on exam[,] and . . . walk[ed] normally coming in to room, [and] c[ould] get on and off exam table without difficulty." *Id.* at 902. Plaintiff's blood sugar was 394. *Id.* On the same date, Plaintiff had a routine mammogram which should no evidence of malignancy. AR at 911. On July 15, 2015, Plaintiff was seen by Aleksandra Maric, M.D. at El Rio Community Health Center regarding her diabetes and musculoskeletal pain. *Id.* at 894–99. Plaintiff complained of an intermittent aching pain

in her right hip which was relieved with pain medication and rest and described her pain level as a four (4) out of ten (10).  *Id.* at 894, 897.  Plaintiff also reported night time pain and numbness.  *Id*. at 894.  Dr. Maric's examination was unremarkable, except for a skin erosion on Plaintiff's right forearm.  *Id.* at 897.  Plaintiff's blood sugar was 373.  AR at 897.  Dr. Maric referred Plaintiff to orthopedic surgery and the pain clinic.  *Id.* at 898.  On July 25, 2015, Plaintiff was seen by Dr. Alvarado at Northwest Medical Center, Speedway Urgent Care for an upper respiratory infection.  *Id.* at 1439–44.  Dr. Alvarado's physical examination was generally unremarkable.  *Id.*  Dr. Alvarado diagnoses included cough, acute sinusitis, and diabetes mellitus without mention of complication.  *Id.* at 1442.  Dr. Alvarado prescribed antibiotics and a cough suppressant.  AR at 1442.

On August 13, 2015, Plaintiff had magnetic resonance imaging of her right hip.  *Id.* at 915, 1158.  John Erogul, M.D. found "[m]ild degenerative changes of the right hip as evidenced by slight subchondral sclerosis in the acetabulum and mild osteophytosis in the femoral head."  *Id.*  Dr. Erogul further found "[n]o convincing evidence of acute fracture or internal derangement."  *Id.*  On August 27, 2015, Plaintiff saw NP Lonergan for pain management.  *Id.* at 1192.  Plaintiff complained of right hip and groin pain, neck pain with popping, stiffness, and muscle spasms.  AR at 1192.  NP Lonergan noted tenderness along Plaintiff's lumbosacral spine and cervical neck with muscle spasms.  *Id.*  NP Lonergan increased Plaintiff's Flexeril prescription.  *Id.*

On September 13, 2015, Plaintiff was seen by Dr. Colvin at Northwest Medical Center, Speedway Urgent Care regarding an upper respiratory infection and ear ache.  *Id.* at 1430–38.  Dr. Colvin's examination was generally unremarkable.  *Id.*  Dr. Colvin diagnosed acute sinusitis, not otherwise specified, and cough.  AR at 1433.  Dr. Colvin prescribed a cough suppressant and an antibiotic.  *Id.*  On September 21, 2015, Plaintiff saw NP Lonergan for pain management.  *Id.* at 1191.  Plaintiff reported right shoulder, hip, and groin pain, as well as neck popping but with less pain.  *Id.*  NP Lonergan noted reducing Plaintiff's Flexeril dosage and prescribed oxycodone.  *Id.*  No other treatment modifications were made.  AR at 1191.

On October 1, 2015, Plaintiff had chest radiographs for unexplained right chest wall pain. *Id.* at 913, 1166. Thomas R. Stejskal, M.D. found "[n]o acute cardiopulmonary abnormality." *Id.* On October 29, 2015, Plaintiff was seen in the Emergency Department of Banner University Medical Center ("UMC") for chest pain. *Id.* at 1006–1070. Plaintiff reported experiencing intermittent chest pain the previous evening, rating it approximately seven (7) out of ten (10). *Id.* at 1020. Then, at work, "she felt a 5/10 pressure in the center of her chest with radiation to the left neck and work colleagues took her BP and noted it to be 190/160 so they called EMS to have her transported/evaluated in the ED." AR at 1020. Plaintiff was given aspirin and nitroglycerin en route to the hospital, which resulted in the complete resolution of her symptoms. *Id.* Plaintiff's examination was generally unremarkable, except for T wave inversions in aVR and V1 of her electrocardiogram. *Id.* at 1023. Plaintiff was discharged to home with a referral to cardiology for further testing. *Id.* On October 19, 2015, Plaintiff saw NP Lonergan for pain management. *Id.* at 1190. Plaintiff complained of continued right hip and groin pain, as well as neck pain with muscle spasms. AR at 1190. NP Lonergan noted tenderness in Plaintiff's lumbosacral spine, cervical neck, and ribs. *Id.* NP Lonergan prescribed a cream for Plaintiff's arm rash. *Id.* On October 27, 2015, Plaintiff was seen by Dr. Alvarado at Northwest Medical Center, Speedway Urgent Care regarding an upper respiratory infection. *Id.* at 1421–29. Dr. Alvarado's examination of Plaintiff was generally unremarkable. *Id.* at 1422–24. Dr. Alvarado diagnoses included acute sinusitis and diabetes and he prescribed an antibiotic. AR at 1424.

On November 4, 2015, Plaintiff was seen in the Banner UMC cardiology department to establish care. *Id.* at 1071–79. Physical examination of Plaintiff was unremarkable. *Id.* at 1074. Arun Srinivasan Kannan, M.D. assessed typical chest pain with multiple risk factors and chronic thrombocytopenia. *Id.* Dr. Kannan referred Plaintiff for cardiac catheterization and spoke with Dr. Gonzalez-Osete regarding her thrombocytopenia. *Id.* On November 16, 2015, Plaintiff saw NP Lonergan for pain management. AR at 1189. Plaintiff complained of lower and mid-back pain, as well as

neck pain alleged to have been due to the weather. *Id.* NP Lonergan found tenderness on Plaintiff's lumbosacral and cervical spine. *Id.* No changes were made to Plaintiff's treatment. *Id.* On November 19, 2015, Plaintiff underwent cardiac catheterization. *Id.* at 1080–1132. Kapildeo Lotun, M.D. found "[m]ild luminal irregularities and otherwise normal coronaries." AR at 1092.

On December 3, 2015, Plaintiff was seen by William Straw, M.D. at Northwest Medical Center, Speedway Urgent Care for symptoms consistent with an upper respiratory infection. *Id.* at 1412–20. Dr. Straw's examination was generally unremarkable, although Plaintiff's blood pressure was elevated. *Id.* at 1413–15. Dr. Straw diagnosed acute sinusitis and prescribed an antibiotic. *Id.* at 1414–15. On December 16, 2015, Plaintiff saw NP Lonergan for pain management. *Id.* at 1188. Plaintiff complained of lower back, cervical neck, and ankle pain. AR at 1188. NP Lonergan noted tenderness in Plaintiff's lumbosacral and cervical spine. *Id.* No changes were made to Plaintiff's treatment. *Id.*

On January 13, 2016, Plaintiff saw NP Lonergan for pain management. *Id.* at 1150, 1187. Plaintiff complained of right hand and wrist pain, right hip pain, neck pain, and lower back pain. *Id.* Plaintiff also reported that her neck popping was improved. AR at 1150, 1187. NP Lonergan noted tenderness in Plaintiff's cervical and lumbosacral spine, as well as her right hip. *Id.* No changes were made to Plaintiff's treatment. *Id.* Plaintiff's uranalysis on the same date indicated positive results for opiates, benzodiazepines, and oxycodone, as expected. *Id.* at 1160, 1176, 1540. On February 11, 2016, Plaintiff reported that her left wrist was improved, her neck pain was between a five (5) and six (6), and she still had right hip pain. *Id.* at 1149, 1186. NP Lonergan noted tenderness in Plaintiff's cervical spine and right hip, but decreased tenderness in her left wrist. AR at 1149, 1186. No changes were made to Plaintiff's treatment. *Id.*

On March 10, 2016, Plaintiff saw NP Lonergan for pain management. *Id.* at 1148. Plaintiff reported receiving a promotion with more days. *Id.* Plaintiff further reported more pain in her right hip going to her foot. *Id.* NP Lonergan reported tenderness over Plaintiff's right hip going to her foot, as well as cervical spine tenderness. *Id.* NP Lonergan

modified Plaintiff's Ativan prescription. AR at 1148. On April 11, 2016, Plaintiff saw NP Lonergan for pain management. *Id.* at 1147. Plaintiff complained of pain in both shoulders, as well as her upper back and right hip into her leg. *Id.* Plaintiff rated her pain at a six (6) out of ten (10). NP Lonergan noted tenderness in Plaintiff's right leg and hip, shoulders, and cervical and thoracic spine. *Id.* No changes were made to Plaintiff's treatment plan. *Id.* On April 29, 2016, Plaintiff was seen by Kathleen Stuart, D.O. at El Rio Community Health Center for her diabetes. AR at 889–93. Dr. Stuart noted fatigue and weight loss as symptoms associated with Plaintiff's diabetes. *Id.* at 889–90. Plaintiff described her pain level as a six (6) out of ten (10). *Id.* at 891. Dr. Stuart's examination was unremarkable. *Id.* at 890–91.

On May 9, 2016, Plaintiff saw NP Lonergan for pain management. *Id.* at 1146. Plaintiff reported that her shoulder pain was the same, her neck was hurting, her mid back pain traveled to her shoulder, and her right hip pain travels down her leg. AR at 1146. NP Lonergan noted tenderness over each of these regions. *Id.* No changes were made to Plaintiff's treatment plan. *Id.* On May 19, 2016, Plaintiff was seen by Dr. Straw at Northwest Medical Center, Speedway Urgent Care for sinus congestion and urinary burning and frequency. *Id.* at 1393–1402. Dr. Straw's examination was generally unremarkable. *Id.* at 1394–97. Dr. Straw diagnoses included bronchitis and a urinary tract infection. AR at 1396–97. As such, he prescribed an antibiotic and cough suppressant. *Id.*

On June 8, 2016, Plaintiff was seen by Primarosa Cardenas, N.P. at El Rio Community Health Center regarding her diabetes and for a follow-up after laboratory work. *Id.* at 885–88. NP Cardenas's examination was generally unremarkable, but Plaintiff's blood sugar was 425. *Id.* at 885–87. On June 9, 2016, Plaintiff saw NP Lonergan for pain management. *Id.* at 1145. Plaintiff reported her shoulders did not hurt as badly, but her hip was hurting a lot more, as well as her right leg. AR at 1145. NP Lonergan noted tenderness in Plaintiff's shoulders, right hip, and cervical spine. *Id.* Plaintiff's treatment plan remained unchanged. *Id.* On June 27, 2016, Plaintiff was seen by Donna Stark, M.D. at Northwest Medical Center, Speedway Urgent Care regarding sinus congestion and

cough. *Id.* at 1384–92. Dr. Stark's examination was generally unremarkable. *Id.* at 1385–87. Dr. Stark diagnosed acute maxillary sinusitis and prescribed an antibiotic, cough suppressant, and steroid nasal spray. AR at 1387.

On July 3, 2016, Plaintiff was seen by Dr. Alvarado at Northwest Medical Center, Speedway Urgent Care regarding frequent and urgent urination. *Id.* at 1373–83. Dr. Alvarado's examination was generally unremarkable. *Id.* at 1374–77. Dr. Alvarado diagnosed yeast vaginitis, painful urination, and diabetes mellitus with hyperglycemia. *Id.* at 1377. Dr. Alvarado prescribed an antifungal. *Id.* On July 7, 2016, Plaintiff saw NP Lonergan for pain management. AR at 1144. Plaintiff reported that her right shoulder hurt more and her right hip and leg were still hurting. *Id.* NP Lonergan's examination was unremarkable, and Plaintiff's treatment plan remained unchanged. *Id.* On the same date, Plaintiff had a uranalysis which indicated positive results for morphine, benzodiazepines, and oxycodone, as expected. *Id.* at 1175, 1539. On July 27, 2016, Plaintiff had an abdominal ultrasound of her liver. *Id.* at 910. Mark Peterson, M.D. found hepatic cirrhosis without an "appreciable hepatic mass or nodule or ascites[,]" a normal gallbladder, and no biliary dilation. AR at 910. On the same date, Plaintiff was seen by Dr. Alvarado at Northwest Medical Center, Speedway Urgent Care for sinus congestion and cough. *Id.* at 1364–72. Dr. Alvarado's examination was generally unremarkable, although Plaintiff's blood pressure was elevated. *Id.* at 1365–67. Dr. Alvarado diagnosed acute sinusitis and diabetes mellitus with hyperglycemia and prescribed a cough suppressant and antibiotics. *Id.* at 1367.

On August 4, 2016, Plaintiff saw NP Lonergan for pain management. *Id.* at 1143. Plaintiff reported a migraine headache, and her right shoulder, hip, and leg pain remained unchanged. AR at 1143. NP Lonergan reported tenderness over each of these areas. *Id.* Plaintiff denied depression and anxiety. *Id.* No changes to Plaintiff's treatment plan occurred. *Id.* On August 24, 2016, Plaintiff was seen by Lesley Pyron, N.P. at Northwest Medical Center, Speedway Urgent Care for sinus pressure and pain and cough. *Id.* at 1353–63. NP Pyron's examination was generally unremarkable. AR at 1354–57. NP Pyron

diagnosed acute sinusitis and cough and prescribed a cough suppressant and antibiotics. *Id.* at 1357.

On September 1, 2016, Plaintiff saw NP Lonergan for pain management. *Id.* at 1142. Plaintiff reported "bad" neck and right shoulder pain and her right hip pain remained the same. *Id.* NP Lonergan noted tenderness over Plaintiff's cervical spine and right shoulder. *Id.* NP Lonergan decreased Plaintiff's Ativan dose. AR at 1142. On September 13, 2016, Plaintiff was seen by Dr. Johnson at Northwest Medical Center, Speedway Urgent Care for a cough and sinus pain. *Id.* at 1342–52. Dr. Johnson's examination was generally unremarkable, except for typical upper respiratory infection symptoms, elevated blood pressure, and blood sugar of 523. *Id.* at 1343–46. Dr. Johnson diagnosed cough, acute bronchitis, and hyperglycemia and prescribed a cough suppressant and an antibiotic. *Id.* at 1346. On September 16, 2016, Plaintiff saw Dr. Maric for a follow-up after a visit to the Emergency Department, as well as regarding her diabetes and back pain. *Id.* at 880–84. Dr. Maric's examination was unremarkable, except for Plaintiff's blood sugar which was 350. AR at 880–83. On September 29, 2016, Plaintiff saw NP Lonergan for pain management. *Id.* at 1141. Plaintiff reported neck pain traveling into her shoulders, as well as lower back and hip pain. *Id.* NP Lonergan noted tenderness over Plaintiff's cervical and lumbosacral spine, as well as her shoulders and right hip. *Id.* NP Lonergan further noted that Plaintiff walks two (2) blocks, cares for her granddaughter, and can clean and do laundry. *Id.* No changes were made to Plaintiff's treatment plan. AR at 1141.

On October 2, 2016, Plaintiff saw NP Lonergan for pain management. *Id.* at 1140. Plaintiff reported pain in her neck and arms, but that her lower back was "not too bad." *Id.* NP Lonergan reported tenderness in Plaintiff's cervical spine, lumbosacral spine pain that traveled to her groin, and right shoulder pain. *Id.* NP Lonergan further noted Plaintiff's anxiety. *Id.* No change was made to Plaintiff's treatment plan. *Id.* On October 7, 2016, Plaintiff was seen by Dr. Colvin at Northwest Medical Center, Speedway Urgent Care for sinus pain. AR at 1331–41. Dr. Colvin's examination of Plaintiff was generally unremarkable, except her blood sugar was 345. *Id.* at 1332–35. Dr. Colvin's diagnoses

included acute ethmoidal sinusitis, hyperglycemia, skin lesion, and cough. *Id.* at 1335. Dr. Colvin prescribed a steroid cream, cough suppressant, and antibiotics. *Id.* On October 11, 2016, Plaintiff had a chest radiograph for new shoulder and back pain without cough or fever. *Id.* at 912, 1530. Stella Kahn, M.D. found an "[u]nremarkable portable view of the chest." AR at 912, 1530. On October 15, 2016, Plaintiff was seen by Shahed Amadi, M.D. at Northwest Medical Center, Speedway Urgent Care regarding sinus pain and congestion. *Id.* at 1321–30. Dr. Amadi's examination was unremarkable, except for Plaintiff's elevated blood pressure and heart rate. *Id.* at 1322–24. Dr. Amadi diagnosed sinus pressure and prescribed a cough suppressant. *Id.* at 1324.

On November 15, 2016, Plaintiff was seen by Rachael Gates, D.O. at Northwest Medical Center, Speedway Urgent Care for a sore throat and cough. *Id.* at 1310–20. Dr. Gates's examination was generally unremarkable, except for moderate congestion and elevated blood pressure. AR at 1311–14. Dr. Gates noted an upper respiratory infection with cough and prescribed a cough suppressant and steroid nasal spray. *Id.* On November 22, 2016, Plaintiff saw NP Lonergan for pain management. *Id.* at 1139. Plaintiff reported falling at home resulting in a worsening of her shoulder and hip pain. *Id.* NP Lonergan reported tenderness and soreness over Plaintiff's ribs and shoulders, as well as tenderness over Plaintiff's lumbosacral and cervical spine. *Id.* NP Lonergan noted Plaintiff's anxiety. AR at 1139. NP Lonergan also decreased Plaintiff's Ativan. *Id.* On the same date, Plaintiff had a uranalysis which indicated positive results for morphine, benzodiazepines, and oxycodone, as expected. *Id.* at 1159, 1174, 1538.

On December 5, 2016, Plaintiff was seen by Dr. Johnson at Northwest Medical Center, Speedway Urgent Care for a cough, sore throat, and sinus congestion. *Id.* at 1301–09, 1525. Dr. Johnson's examination was generally unremarkable, except for elevated blood pressure and pulse rate. *Id.* at 1302–04. Dr. Johnson's diagnoses included cough and acute upper respiratory infection, and he prescribed a cough suppressant. AR at 1304. On December 12, 2016, Plaintiff was seen by Dr. Straw at Northwest Medical Center, Speedway Urgent Care for a cough and injury to her wrist after a fall. *Id.* at 1403–11. Dr.

Straw's examination was generally unremarkable, although Plaintiff's heart rate and diastolic blood pressure were elevated. *Id.* at 1404–06. Dr. Straw diagnosed acute bronchitis and a sprained wrist. *Id.* at 1406. Dr. Straw prescribed an antibiotic and cough suppressant. *Id.* On December 20, 2016, Plaintiff was seen by Alicia Gustafson, D.O. at Northwest Medical Center, Speedway Urgent Care for a cough. AR at 1291–1300, 1524. Dr. Gustafson's examination was generally unremarkable, except for elevated pulse rate, respiratory rate, and diastolic blood pressure. *Id.* at 1291–94. Dr. Gustafson diagnosed an acute upper respiratory infection, chronic cough, and diabetes mellitus with hyperglycemia and prescribed a cough suppressant. *Id.* at 1294–95. On December 21, 2016, Plaintiff saw NP Lonergan for pain management. *Id.* at 1138. Plaintiff reported neck popping, as well as a reinjury to her lower back in her fall the previous month. *Id.* NP Lonergan reported tenderness over Plaintiff's lumbosacral spine and popping in her cervical spine. AR at 1138. Plaintiff reported anxiety. *Id.* NP Lonergan did not change Plaintiff's treatment plan. *Id.* On December 27, 2016, Plaintiff was seen by Elizabeth Ramirez, NP at El Rio Community Health Center for a Well Woman exam. *Id.* at 1516–21. NP Ramirez's examination was unremarkable. *Id.* On December 29, 2016, Plaintiff was seen in the St. Mary's Hospital Emergency Department with right sided abdominal pain and vomiting. AR at 1224–37. Plaintiff had a sonogram, as well as computerized tomography ("CT") scan, of the upper right quadrant of her abdomen. *Id.* at 1230–33, 1526–29. Melanie S. Kuhlman, M.D. found a "[d]istended gallbladder without findings of cholelithiasis and a small amount of pericholecystic fluid, nonspecific[,] [these] [f]indings may be related to underlying hepatocellular disease." *Id.* at 1230, 1526. Dr. Kuhlman further found morphologic changes of liver cirrhosis without an underlying mass. *Id.* at 1230, 1232, 1526, 1529. Dr. Kuhlman also found sequela of portal hypertension given splenomegaly. *Id.* at 1232, 1529. David J. Lane, M.D. assessed acute right abdominal pain with distended gallbladder, cirrhosis with elevated liver function tests and thrombocytopenia, hypovolemia with sinus tachycardia, and Type 2 diabetic hyperglycemia. AR at 1226.

On January 18, 2017, Plaintiff saw NP Lonergan for pain management. *Id.* at 1545–

46. Plaintiff complained of lower back and neck pain, as well as gallbladder pain. *Id.* at 1545. NP Lonergan noted tenderness over Plaintiff's cervical and lumbar spine. *Id.* NP Lonergan modified Plaintiff's extended release morphine prescription. *Id.* On January 27, 2017, Plaintiff was seen by Dr. Colvin at Northwest Medical Center, Speedway Urgent Care for a cough and sinus pressure. AR at 1279–90, 1523. Dr. Colvin's examination was generally unremarkable, except for an elevated pulse rate and blood pressure. *Id.* at 1281–83. Dr. Colvin diagnosed acute upper respiratory infection and acute diffuse otitis externa of the left ear and prescribed a cough suppressant and antibiotic steroid drops. *Id.* at 1283.

On February 1, 2017, Plaintiff was seen by Dr. Maric at El Rio Community Health Center for diabetes and paperwork. *Id.* at 1506–15. Plaintiff's blood sugar was 406, but Dr. Maric's examination was otherwise unremarkable. *Id.* at 1510–15. On the same date, Dr. Maric completed a Physical Residual Functional Capacity Assessment ("RFC") regarding Plaintiff. AR at 1239. Dr. Maric opined that Plaintiff could stand two (2) hours or less during an eight (8) hour work day, sit for thirty (30) to sixty (60) minutes before needing to change position, and walk more than one (1) block before needing to rest. *Id.* Dr. Maric further opined that Plaintiff could occasionally carry twenty (20) pounds, reach, grasp, stoop, and crouch, but could never carry more than twenty (20) pounds or kneel. *Id.* Dr. Maric also opined Plaintiff could frequently feel, finger, or handle. *Id.* Dr. Maric opined that Plaintiff would need to lie down during the day, as well as alternate sitting and standing every hour. *Id.* On February 8, 2017, Plaintiff was seen by Dr. Johnson at Northwest Medical Center, Speedway Urgent Care for a bump on the top of her head. AR at 1269–78, 1522. Dr. Johnson's examination was generally unremarkable, except for Plaintiff's elevated pulse and diastolic blood pressure. *Id.* at 1270–72. Dr. Johnson diagnosed cellulitis of the scalp and cluster headache, and prescribed antibiotics. *Id.* at 1272. On the same date, Plaintiff under went retinal imaging. *Id.* at 1531–32. Dr. Scott Clemens reviewed Plaintiff's screening test and diagnosed mild non-proliferative diabetic retinopathy. *Id.* On February 15, 2017, Plaintiff saw NP Lonergan for pain management. AR at 1543. Plaintiff complained of lower and mid-back pain, as well as right hip pain and

a spider bite. *Id.* NP Lonergan noted tenderness over Plaintiff's lumbosacral and cervical spine and hip. *Id.* NP Lonergan further noted that Plaintiff folds laundry, walk one (1) to two (2) blocks and socializes with her daughter and granddaughter. *Id.*

On March 15, 2017, Plaintiff saw NP Lonergan for pain management. *Id.* at 1541. Plaintiff complained of lower and mid-back pain and neck soreness. AR at 1541. NP Lonergan noted tenderness over Plaintiff's lumbosacral and cervical spine. *Id.* NP Lonergan further noted chronic pain, muscle spasms, depression, and anxiety. *Id.* Plaintiff's uranalysis from the same date was negative for all drugs tested. *Id.* at 1537. On March 31, 2017, Plaintiff was seen by Dr. Alvarado at Northwest Medical Center, Speedway Urgent Care for sinus congestion and pain. *Id.* at 1260–68. Dr. Alvarado's examination of Plaintiff was generally unremarkable, except for elevated pulse and blood pressure. AR at 1261–63. Dr. Alvarado diagnosed acute sinusitis and diabetes mellitus with hyperglycemia and prescribed antibiotics and a cough suppressant. *Id.* at 1263.

On April 28, 2017, Plaintiff was admitted to St. Mary's Hospital with a right heel abscess for incision and drainage. *Id.* at 1552–1612. A tissue culture grew Methicillin-resistant Staphylococcus aureus ("MRSA"). *Id.* at 1552–53. On May 17, 2017, Plaintiff was seen in the St. Mary's Hospital Emergency Department complaining of left thumbnail pain. *Id.* at 1549–51. Alicia Aguilar, NP examined Plaintiff and noted that the area along the cuticle was red and swollen, but the nail, nail bed, thumb range of motion, temperature, and sensation were otherwise normal. AR at 1550. NP Aguilar diagnosed cellulitis or early paronychia of the left thumb and prescribed antibiotics with further at home treatment. *Id.*

### b. Examining physician

#### i. *Scott Krasner, M.D.*

On July 16, 2014, Scott Krasner, M.D. examined Plaintiff at the request of AZDES. AR at 653–59. Plaintiff indicated that she was applying for social security due to back, hip, shoulder, and leg pain. *Id.* at 653. Plaintiff reported a prior diagnosis of bulging discs and arthritis in her hips. *Id.* Plaintiff further reported that she underwent two epidural

steroid injections which did not help, and was referred for pain management. *Id.* Plaintiff complained of pain along her neck, right shoulder, and right hip, and indicated that the pain was constant, worsening when she moved, but without numbness or tingling. *Id.* Dr. Krasner listed Plaintiff's current medication as MSER, oxycodone, lisinopril, metoprolol, NovoLog insulin, Lantus insulin, Glipizide, metformin, and gabapentin. AR at 654. Dr. Krasner noted Plaintiff's past medical history to include a history of diabetes, with diabetic neuropathy over the prior two (2) years, a history of anxiety and depression, and hypertension. *Id.*

Dr. Krasner's examination was generally unremarkable, but did note tenderness in Plaintiff's lower lumbar region with "some mild pain at the extreme range of motion of her back[,]" as well as "pain with her shoulders with range of motion" and decreased sensation over her entire right leg below the knee. *Id.* at 654–55. Dr. Krasner noted that Plaintiff was also undergoing opioid pain management. *Id.* at 655. Dr. Krasner opined that "[g]iven her persistent symptomatology, use of pain medications, and findings on exam this would cause some mild to moderate effects on her functional capabilities, especially as it pertains to heavy lifting[] [and] repetitive bending." *Id.*

Dr. Krasner completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) regarding Plaintiff. AR at 656–59. As an initial matter, Dr. Krasner opined that Plaintiff's conditions would impose limitations for twelve (12) continuous months. *Id.* at 656. Dr. Krasner further opined that Plaintiff could frequently lift twenty-five (25) pounds and occasionally lift fifty (50) pounds. *Id.* Dr. Krasner indicated that Plaintiff did not have any limitations with regard to standing, walking, or sitting. *Id.* at 656–57. Dr. Krasner further indicated that Plaintiff was unlimited as to seeing, hearing, or speaking. *Id.* at 657. Dr. Krasner opined that Plaintiff could occasionally climb ramps, stairs, ladders, ropes, and scaffolds; stoop; kneel; crouch; and crawl. AR at 657. Dr. Krasner further opined that Plaintiff was able to reach, handle, finger, and feel without limitation. *Id.* Dr. Krasner found Plaintiff restricted in working around heights and moving machinery, but placed no limitations on her ability to work around extremes in temperature;

dust, fumes, or gases; excessive noise; or with or around chemicals. *Id.* at 658.

### ii. Patricia A. Falcon, Psy.D.

On August 20, 2014, Patricia Falcon, Psy.D. examined Plaintiff at the request of AZDES. AR at 660–67. Dr. Falcon noted that she reviewed "[a] Progress Note from Carondelet St. Mary's Emergency Room with patient admission for chest pain . . . [and] [a] Functional Report[.]" *Id.* at 660. Plaintiff reported that "she ha[d] applied for disability because of severe pain in her back, shoulders, hips, ankles, diabetes, and problems with her liver and platelets." *Id.* Dr. Falcon reviewed Plaintiff's psychiatric history noting that Plaintiff reported "depression and anxiety present since childhood with chronic levels of low depression." *Id.* at 661. At the time of the examination, Plaintiff was working part time, but was not doing any housework due to pain. *Id.* at 660–62. Plaintiff reported that she can perform personal hygiene without difficulty and can take public transportation, but does not drive as she has high levels of anxiety and pain. AR at 662.

Dr. Falcon noted that Plaintiff arrived on time for their appointment, was able to walk the half block from the bus stop to the office, as well as the 100 feet back to the doctor's office without difficulty. *Id.* Dr. Falcon further noted Plaintiff "had some mild restlessness, often changing her position in the chair and stood up once during th[e] session to stretch." *Id.* Regarding Plaintiff's psychological symptoms, Dr. Falcon noted that Plaintiff reported her mood as irritable. *Id.* Plaintiff reported poor sleep due to pain and that she has low energy and a lack of desire to engage in activities. *Id.* Plaintiff further described that she often is depressed and after a couple of weeks the depression turns to anger. AR at 662–63.

Dr. Falcon administered a Mini Mental Status Exam to Plaintiff, who scored 28 out of 30, or within the normal range of functioning. *Id.* at 663. Dr. Falcon described the results of the exam as follows:

> [Plaintiff] is alert. She is oriented times five. No difficulty with language items. Comprehension and sequencing is at a three-step command level. No reading, writing, or object construction difficulties were noted. Short-term recall was 3/3. Serial sevens was 3/5. She engaged in finger counting to correct herself. No difficulty with spelling forward and backwards. Problem

solving is concrete. Similarities were abstract. Stream of thought is spontaneous. Thought continuity is logical, goal directed. Thought processes are rational and realistic. No delusions or hallucinations are currently present. Judgment and insight appear to be good.

*Id.* Dr. Falcon opined that "[f]rom a functional standpoint, it appears that no desire to cook dinner or assist with the housework and to socialize are the main functional limitations from a psychological standpoint[,] [with] [a]ll other limitations . . . due to physical reasons." *Id.* Dr. Falcon further opined that "[o]verall, [Plaintiff] meets criteria for persistent depressive disorder, mild." *Id.* Dr. Falcon's diagnoses included persistent depressive disorder, early onset, mild; family stressors, including teenage distress and financial difficulties; chronic pain issues with an anxiety component and neuro-orthopedic factors; chronic back pain; osteoarthritis; cirrhosis; and Diabetes Mellitus Type II. AR at 663. Dr. Falcon also opined that "[i]t did not appear [that] [Plaintiff] was exaggerating information[,] [s]he readily participated in the Mini Mental Status Exam[,] [and] . . . consider[ed] [Plaintiff's] responses to be an accurate depiction of her current level of distress." *Id.*

Dr. Falcon completed a Psychological/Psychiatric Medical Source Statement regarding Plaintiff. *Id.* at 665–66. Dr. Falcon indicated that there was a current psychological diagnosis, but did not expect any limitations from the condition to last more than twelve (12) months. *Id.* at 665. Dr. Falcon reported that Plaintiff did not have difficulty with memory and "seemed capable of carrying out simplistic and complex procedures." *Id.* Dr. Falcon further reported that she "saw no interference from a psychological standpoint in [Plaintiff's] ability to persist and concentrate on the Mini Mental Status Exam or in th[e] interview." AR at 665. Dr. Falcon noted that Plaintiff did not display any irritability during the interview and "psychological factors [were] not interfering with [Plaintiff's] ability to interact." *Id.* at 666. Dr. Falcon also opined that Plaintiff appeared to be able to adapt to change without much difficulty. *Id.*

. . .

. . .

### iii.    Jeri B. Hassman, M.D.

#### A.  2015 Assessment

On February 17, 2015, Jeri B. Hassman, M.D. examined Plaintiff at the request of AZDES.  AR at 729–37.  Dr. Hassman indicated that Plaintiff was referred "for an Internal Medicine Consultation and Statement of Ability to Do Work-Related Activities."  *Id.* at 729.  Dr. Hassman listed Plaintiff's alleged complaints as including right shoulder pain, lower back pain, bulging discs, right hip bone-on-bone, right ankle weakness, insulin-dependent diabetes mellitus, low blood platelet count, high blood pressure, dizziness, anxiety, and depression.  *Id.*  Plaintiff's medications included metformin, pravastatin, metoprolol, lisinopril, acyclovir, oxycodone, lorazepam, extended release morphine, Lantus insulin, NovoLog insulin, aspirin, Zoloft, and gabapentin.  *Id.* at 730.

Plaintiff reported occasional headaches and frequent depression and anxiety.  *Id.*  Dr. Hassman recorded Plaintiff's blood pressure on recheck as 179/114 with a pulse of 91.  AR at 730.  Dr. Hassman reported Plaintiff's gait as normal, and noted that she refused to stand or walk on her heels or toes and hop on either foot because of right hip pain.  *Id.*  Dr. Hassman further noted a full range of motion in Plaintiff's cervical spine without pain, as well as a full range of motion of both upper extremities without pain.  *Id.*  Plaintiff reported that her right shoulder pain had improved since she went for physical therapy.  *Id.*  Plaintiff exhibited tenderness over the lumbar spine and pain at the end range of straight leg testing.  *Id.* at 731.  Dr. Hassman noted minimal pain with the right hip range of motion and a minimally positive Patrick's sign and impingement sign in her right hip.  AR at 731.  Dr. Hassman's diagnoses indicated that Plaintiff's right shoulder was normal; she had minimal pain with range of motion in her lumbar spine, but physical examination was generally unremarkable; that she could not rule out degenerative joint disease in Plaintiff's right hip; uncontrolled hypertension; reportedly poorly controlled diabetes mellitus; and occasional right ankle pain, but no swelling, warmth, or tenderness.  *Id.* at 731–32.

Dr. Hassman completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) regarding Plaintiff.  *Id.* at 732–37.  Dr. Hassman reiterated her

diagnoses and opined that these conditions would impose limitations for twelve (12) continuous months. *Id.* at 732–33. Dr. Hassman further opined that Plaintiff could frequently lift ten (10) pounds and occasionally lift twenty (20) pounds. *Id.* at 733. Dr. Hassman also opined that Plaintiff has limitations in standing and/or walking. AR at 733. Dr. Hassman opined that Plaintiff could stand and/or walk for at least two (2) hours but less than six (6) hours in an eight hour (8) hour day. *Id.* Dr. Hassman further opined that Plaintiff was limited in sitting to between six (6) and eight (8) hours in an eight (8) hour day. *Id.* at 734. Dr. Hassman also opined that Plaintiff was unlimited in seeing, hearing, speaking. *Id.* Dr. Hassman found that Plaintiff could never climb ladders, ropes, or scaffolds; kneel; or crawl. *Id.* Dr. Hassman limited Plaintiff to occasional climbing ramps or stairs; stooping; and crouching. AR at 734. Dr. Hassman further found that Plaintiff was unlimited in her ability to reach, handle, finger, and feel. *Id.* at 735. Dr. Hassman restricted Plaintiff in working around heights, moving machinery, extremes in temperatures, with or around chemicals, and around dust, fumes, or gases. *Id.* Dr. Hassman did not place any restriction on Plaintiff's ability to work around excessive noise. *Id.*

### B. 2017 Assessment

On February 21, 2017, Jeri B. Hassman, M.D. examined Plaintiff at the request of AZDES. AR at 1240–50. Dr. Hassman indicated that Plaintiff was referred "for an Internal Medicine Consultation and Statement of Ability to Do Work-Related Activities." *Id.* at 1240. Dr. Hassman listed Plaintiff's alleged complaints as including right shoulder pain, lower back pain, bulging discs, right hip bone-on-bone, right ankle weakness, insulin-dependent diabetes, low platelet count, dizziness, high blood pressure, anxiety, and depression. *Id.* Plaintiff's medications included pravastatin, lisinopril, metoprolol, Oxycodone, extended release morphine, lorazepam, Lantus insulin, and NovoLog insulin. *Id.* at 1241.

Dr. Hassman recorded Plaintiff's blood pressure as 165/101 with a pulse of 106, and Plaintiff admitted to not having taken her lisinopril. *Id.* Dr. Hassman noted that Plaintiff "had normal ambulation without any limp or any complaints of pain." AR at 1241. Dr.

Hassman further noted that Plaintiff was able to stand and walk on her heels; had normal balance for tandem walking; was able to hop on either foot; was able to bend down and pick up something from the floor; was able to kneel on either knee without pain; and was independent in dressing and undressing, getting on and off the examining table, and getting in and out of the chair. *Id.* Dr. Hassman noted a full range of motion of the cervical spine without pain or tenderness. *Id.* Dr. Hassman further noted a full range of motion of both upper extremities without pain, as well as a few sores over her right upper extremity that were "obviously . . . secondary to compulsive picking." *Id.* at 1242. Dr. Hoffman reported a negative Phalen's test, Finkelstein's test, Tinel's sign, and Romberg's sign and found no swelling, warmth, or tenderness of Plaintiff's shoulders, elbows, wrists or fingers. *Id.* Dr. Hassman did not find tenderness in the thoracic and lumbar spine nor did she find any evidence for muscle spasm or hypertonicity of the paraspinal muscles. *Id.* Dr. Hassman reported that Plaintiff had a full range of motion of the lumbar spine without pain and negative straight leg raising tests bilaterally both in the sitting and supine position. AR at 1242. Dr. Hassman found mild pain with range of motion of the right hip and a minimally positive Patrick's sign, but the hip had a full range of motion. *Id.* Plaintiff also exhibited a full range of motion of both lower extremities without pain and all other aspects of the lower limbs were unremarkable. *Id.*

Dr. Hassman's diagnoses included hypertension, hyperlipidemia, diabetes mellitus—on insulin, obesity, unremarkable physical examination beyond mild pain with range of motion of the right hip, and compulsive picking. *Id.* Dr. Hassman completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) regarding Plaintiff. *Id.* at 1243–50. Dr. Hassman opined that Plaintiff could lift and/or carry between twenty-one (21) and fifty (50) pounds occasionally and up to twenty (20) pounds frequently. AR at 1243–44. Dr. Hassman further opined that Plaintiff could sit for two (2) hours at a time without interruption, for a total of eight (8) hours in a work day. *Id.* at 1244. Dr. Hassman also opined that Plaintiff could stand for one (1) hour at a time without interruption, for a total of three (3) hours in an eight (8) hour work day. *Id.* Dr. Hassman

opined that Plaintiff could walk for one (1) hour at a time without interruption, for a total of two (2) hours in an eight (8) hour work day. *Id.* Dr. Hassman noted that Plaintiff did not require the use of a cane. *Id.* Dr. Hassman further opined that Plaintiff could occasionally reach overhead and push or pull, and could frequently reach in all other directions, handle, finger, and feel. AR at 1245. Dr. Hassman also opined that Plaintiff could frequently operate foot controls. *Id.* Dr. Hassman opined that Plaintiff could frequently stoop; occasionally climb stairs, ramps, ladders, or scaffolds; occasionally kneel, crouch, or crawl; and never balance. *Id.* at 1246. Dr. Hassman noted Plaintiff did not have any impairment to her hearing or vision. *Id.* Regarding environmental limitations, Dr. Hassman indicated that Plaintiff should never be exposed to unprotected heights, moving mechanical parts, dust, odors, fumes, pulmonary irritants, extreme cold, extreme heat, or vibrations; could occasionally be exposed to humidity and wetness; and could frequently operate a motor vehicle and be exposed to loud noise. *Id.* at 1247. Dr. Hassman further opined that Plaintiff could shop; travel without a companion for assistance; ambulate without using a wheelchair, walker, canes, or crutches; walk a block at a reasonable pace and on an uneven surface; climb a few steps at a reasonable pace with the use of a single handrail; prepare simple meals and feed herself; perform personal hygiene; and sort, handle and use paper files. AR at 1248. Dr. Hassman reported that the limitations she found would last for twelve (12) consecutive months. *Id.*

### 3. <u>Vocational Expert Testimony</u>

#### a. Kathleen McAlpine, C.R.C., C.D.M.S.

Ms. Kathleen McAlpine testified as a vocational expert at the initial administrative hearing. AR at 27, 59–62. Because there was not past relevant work, the ALJ went straight to hypotheticals. *Id.* at 59. The ALJ asked Ms. McAlpine to consider a hypothetical individual of the same age and educational background of the Plaintiff and no past relevant work experience with the additional restrictions of sitting, standing, and walking six (6) hours in an eight (8) hour workday; standing or walking three (3) hours in an eight (8) hour workday; occasionally carrying twenty (20) pounds; frequently carrying ten (10) pounds;

occasionally climbing stairs, balancing, stooping, or crouching; never climbing ladders, kneeling, or crawling; and only occasional exposure to heights, moving machinery, chemicals, temperature extremes, dust, fumes, and smoke. *Id.* at 60. The ALJ defined occasional as "very little to one-third of the time." *Id.* The ALJ asked Ms. McAlpine if there were any jobs available in the state or national economy for such an individual. *Id.* Ms. McAlpine responded affirmatively, and testified that such an individual would be able to perform the job of surveillance system monitor, Dictionary of Occupational Titles ("DOT") number 379.367-010, with a Specific Vocational Preparation ("SVP") of 2, sedentary exertional level, reasoning level 3, math level 1, and language level 3, and 3,764 jobs in the national economy. AR at 60. Ms. McAlpine also suggested the hypothetical individual could work as a document preparer, DOT number 249.587-018, with an SVP of 2, sedentary exertional level, reasoning level 3, math level 1, and language level 2, and 13,738 jobs in the national economy. *Id.* at 60–61. Ms. McAlpine's third suggestion was table worker, DOT number 739.687-182, with an SVP of 2, sedentary exertional level, reasoning level 1, math level 1, and language level 1, and 21,816 jobs in the national economy. *Id.* Ms. McAlpine testified that her testimony was consistent with the DOT. *Id.* at 61.

Upon questioning by Plaintiff's counsel, Ms. McAlpine testified that all of the jobs would be eliminated if the hypothetical individual were limited to occasional reaching and handling. *Id.* Ms. McAlpine also testified that modifying the ALJ's hypothetical individual by limiting standing and combining standing or walking to less than two (2) hours per day would not alter the list of possible jobs. AR at 61. Ms. McAlpine further opined that if the hypothetical individual were off task for ten (10) percent of the time, she would likely be able to get the job, but not maintain it. *Id.* at 62.

### b. Marilyn Kinnier, M.S.

Ms. Marilyn Kinnier testified as a vocational expert at the supplemental administrative hearing. AR at 27, 71–74. Plaintiff's counsel asked about the availability of jobs for an individual who is limited to standing or walking for two (2) hours or less per

day; sitting for thirty (30) to sixty (60) minutes at a time; walking one (1) block or less at a time; lifting or carrying up to twenty (20) pounds occasionally; occasional reaching in all directions, grasping, stooping, and crouching; frequent fingering, handling, and feeling; and never kneeling. *Id.* at 71. Occasional was defined as two (2) hours or less, and frequent was defined as two (2) to six (6) hours. *Id.* Ms. Kinnier testified that such an individual would not be able to return to Plaintiff's past relevant work, but could perform a position in which she could alternate between sitting and standing, such as a cashier, Dictionary of Occupational Titles ("DOT") number 211.462-010, with a Specific Vocational Preparation ("SVP") of 2, and light exertional level—though considered sedentary with a sit/stand option—and with 40,000 jobs available in the national economy. *Id.* at 72. Ms. Kinnier further testified that her opinion was based upon her surveys of job descriptions and job placements. *Id.* Plaintiff's counsel further clarified that occasional grasping was equivalent to restricting handling to occasional. AR at 72–73. Ms. Kinnier testified that with those manipulative restrictions, there would be no jobs available. *Id.* at 73. Ms. Kinnier also testified that an individual who was absent in excess of five (5) days per month could not sustain employment. *Id.* Finally, Ms. Kinnier opined that an individual who needed to lie down during working hours in excess of normal break times would not be able to sustain employment. *Id.*

### 4. <u>Lay Witness Testimony</u>

#### a. **Curtis Walker**

On February 11, 2015, Curtis Walker, Plaintiff's boyfriend, completed a Function Report—Adult—Third Party. AR at 332–39. Mr. Walker reported that Plaintiff lived in a house with family, and he is with Plaintiff all the time. *Id.* at 332. Mr. Walker further reported that Plaintiff "cannot get out of bed[,] [with] [p]ain in back, neck and left hip and leg[,] [and] [s]ugars from diabetes limints [sic] her ability to function [f]or days." *Id.* Mr. Walker noted that Plaintiff "stay[s] in bed most of the time." *Id.* at 333. Mr. Walker reported that Plaintiff's sixteen (16) and eleven (11) year old daughters care for their pets. *Id.* Mr. Walker further reported that Plaintiff is "up at night in pain or up every 1 hr having

to use the rest room." AR at 333.

Mr. Walker indicated that Plaintiff did not have any problems with personal care, but that "her daughters have to remind her to shower or wash hair." *Id.* at 334. Mr. Walker also noted that he reminds Plaintiff to take her medication when he takes his. *Id.* Mr. Walker reported that Plaintiff does not prepare her own food, except perhaps twice per month. *Id.* Mr. Walker observed that Plaintiff "use[d] to cook every day 2 times a day[,]" but now she "can't get motived [sic] or in to [sic] much pain." *Id.*

Mr. Walker reported that Plaintiff folds laundry and sometimes does the dishes. AR at 334. Mr. Walker further reported that Plaintiff goes out two (2) to three (3) times per week, either riding in a car or using public transportation. *Id.* at 335. Mr. Walker noted that Plaintiff does not go out alone because of her constant falling and fear of passing out due to her sugar levels. *Id.* Mr. Walker reported that Plaintiff shops for groceries once per month for approximately three (3) hours. *Id.* Mr. Walker further reported that Plaintiff is able to pay bills, count change, handle a savings account, and use a checkbook or money orders; however, he noted that Plaintiff also gets frustrated because she cannot keep track of her spending. *Id.* at 335–36.

Mr. Walker described Plaintiff's hobbies as sleeping and watching television. AR at 336. Mr. Walker observed that Plaintiff's activity level has dropped, because she does not have the strength to do the things that she used to. *Id.* Mr. Walker noted that Plaintiff does not spend time with others, and needs to be reminded to go places and cannot go out unaccompanied. *Id.* Mr. Walker described Plaintiff as not liking to be around others, whereas she used to go out with friends and family. *Id.* at 337. Mr. Walker reported Plaintiff's condition as affecting her ability to lift, squat, bend, stand, reach, and walk. *Id.* Mr. Walker further reported that Plaintiff can walk approximately ten (10) minutes before needing to rest for between twenty (20) minutes and one half hour. AR at 337. Mr. Walker described Plaintiff's ability to follow written and spoken instructions as good. *Id.*

### b. Anise Bryant

Anise Bryant, Plaintiff's daughter, wrote a letter regarding the assistance she gives

her mother. AR at 404–05. Ms. Bryant reported that she goes to her mother's home in the mornings to help her out of bed, make her breakfast, and help her shower. *Id.* at 404. Ms. Bryant noted that some days Plaintiff is in too much pain to shower, and on other days she is up by the time Ms. Bryant arrives. *Id.* Ms. Bryant further reported going over in the evenings to make Plaintiff dinner and clean up for her, after which Ms. Bryant helps Plaintiff to bed. *Id.* Some nights, Ms. Bryant spends the night at Plaintiff's home. *Id.* Ms. Bryant also expressed concern regarding both the physical and emotional pain that Plaintiff suffers. AR at 404–05.

## II.   STANDARD OF REVIEW

The factual findings of the Commissioner shall be conclusive so long as they are based upon substantial evidence and there is no legal error. 42 U.S.C. §§ 405(g), 1383(c)(3); *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). This Court may "set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted); *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

Substantial evidence is "'more than a mere scintilla[,] but not necessarily a preponderance.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Connett v. Barnhart*, 340 F.3d 871, 873 (9th Cir. 2003)); *see also Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). Further, substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Where "the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Tackett*, 180 F.3d at 1098 (citing *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007). Moreover, the court may not focus on an isolated piece of supporting evidence, rather it must consider the entirety of the record weighing both evidence that supports as well as that which detracts from the Secretary's conclusion. *Tackett*, 180 F.3d at 1098 (citations

omitted).

## III.   ANALYSIS

### A.   *The Five-Step Evaluation*

The Commissioner follows a five-step sequential evaluation process to assess whether a claimant is disabled.  20 C.F.R. § 404.1520(a)(4).  This process is defined as follows:  Step one asks is the claimant "doing substantial gainful activity[?]"  If yes, the claimant is not disabled; step two considers if the claimant has a "severe medically determinable physical or mental impairment[.]"  If not, the claimant is not disabled; step three determines whether the claimant's impairments or combination thereof meet or equal an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App.1.  If not, the claimant is not disabled; step four considers the claimant's residual functional capacity and past relevant work.  If claimant can still do past relevant work, then he or she is not disabled; step five assesses the claimant's residual functional capacity, age, education, and work experience.  If it is determined that the claimant can make an adjust6ment to other work, then he or she is not disabled.  20 C.F.R. § 404.1520(a)(4)(i)-(v).

In the instant case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of March 5, 2014.  AR at 29.  At step two of the sequential evaluation, the ALJ found that "the claimant has the following severe impairments: diabetes mellitus, diabetic neuropathy, arthritis, and degenerative disc disease (20 CFR 416.920(c))."  *Id.* at 30.  The ALJ further found that "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926)."  *Id.*  Prior to step four and "[a]fter careful consideration of the entire record," the ALJ determined that "the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except as follows:  able to sit six hours out of an 8-hour day; stand three hours out of an 8-hour day; walk three hours out of an 8-hour day; can occasionally lift and carry

20 pounds, frequently lift and carry 10 pounds; can occasionally climb stairs, never climb ladders; occasionally balance, stoop, and crouch; never kneel or crawl; can only have occasional exposure to heights, moving machinery, chemicals, temperature extremes, dust, fumes, and smoke[,] [with] [o]ccasional . . . defined as very little, up to one-third of the time and never is defined as no useful ability." *Id.* at 31. At step four, the ALJ found that "[t]he claimant has no past relevant work (20 CFR 416.965)." *Id.* at 33. At step five, the ALJ found that after "[c]onsidering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a))." AR at 33. Accordingly, the ALJ determined that Plaintiff was not disabled. *Id.* at 34.

Plaintiff asserts that the ALJ erred in failing to mention her diagnosis of hepatic cirrhosis and failing to articulate specific and legitimate reasons to discount treating physician Aleksandra Maric, M.D.'s opinion, as well as Plaintiff's symptom testimony. *See* Opening Br. (Doc. 18).

### B.    Step Two Analysis

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). The claimant bears the burden to show medical evidence consisting of signs, symptoms, and laboratory findings to establish a medically determinable physical or mental impairment. *Ukolov v. Barnhart*, 420 F.3d 1002, 1004-05 (9th Cir. 2005); 20 C.F.R. §§ 404.1512, 404.1520; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

"[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen v. Yuckert*, 482 U.S. 137, 153-54, 107 S.Ct. 2287, 2297-98, 96 L.Ed.2d 119 (1987)). "It is not meant to identify the impairments that should be taken into account when determining the RFC." *Buck v. Berryhill*, 869 F.3d 1040, 1048–49 (9th Cir. 2017). Moreover, "[i]n assessing RFC,

the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Id.* at 1049 (quoting *Titles II & XVI: Assessing Functional Capacity in Initial Claims*, Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996)) (alterations in original). As such, "[t]he RFC . . . *should* be exactly the same regardless of whether certain impairments are considered 'severe' or not." *Buck*, 869 F.3d at 1049 (emphasis in original). "An impairment or combination of impairments may be found 'not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting *Smolen*, 80 F.3d at 1290 (emphasis added)).

Here, the Commissioner argues that "because the ALJ decided step two in Ruiz's favor and continued with the sequential evaluations, Ruiz cannot show prejudice from the ALJ's step-two finding." Response (Doc. 20) at 4. Plaintiff points out, however, that "the ALJ missed considering an entire impairment, one that is notable for causing extreme fatigue[,] [and] [e]ven if the error lies at Step five rather than Step Two . . . there was still harmful error because the ALJ's failure to consider hepatic cirrhosis led to a failure to appropriately analyze fatigue and its limiting effects." Reply (Doc. 21) at 2.

Plaintiff's medical records document a diagnosis of hepatic cirrhosis. AR at 412, 414, 593, 612, 615, 663, 775, 910, 1226, 1230, 1232, 1526, 1529. Review of the ALJ's opinion confirms that she did not address this diagnosis. *See id.* at 27–34. Defendant asserts that the ALJ considered Plaintiff's testimony regarding fatigue, and this was sufficient to account for any limiting effects of Plaintiff's hepatic cirrhosis in assessing the RFC. Response (Doc. 20) at 5. Careful review of the ALJ opinion, however, shows that the ALJ considered Plaintiff's testimony regarding drowsiness due to prescribed medications. AR at 15. This Court may "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [s]he did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014) (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

If the ALJ had properly considered the hepatic cirrhosis diagnosis in developing Plaintiff's RFC any potential error in its omission at Step Two would have been harmless. *See Buck*, 869 F.3d 1040. Because the ALJ omitted the diagnosis from her analysis, the Court cannot find such error harmless. *See Mercado v. Berryhill*, 2017 WL 4029222, *6 (N.D. Cal. Sept. 13, 2017).

### C. *Plaintiff's Symptoms*

#### 1. Legal standard

An ALJ must engage in a two-step analysis to evaluate a claimant's subjective symptom testimony. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007). First, "a claimant who alleges disability based on subjective symptoms 'must produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged[.]'" *Smolen v. Chater*, 80 F.3d 1273, 1281–82 (9th Cir. 1996) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*) (internal quotations omitted)); *see also Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). Further, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen*, 80 F.3d at 1282 (citations omitted); *see also Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "Nor must a claimant produce 'objective medical evidence of the pain or fatigue itself, or the severity thereof.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Smolen*, 80 F.3d at 1282). "[I]f the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281); *see also Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014) (rejecting the contention that the "clear and convincing" requirement had been excised by prior Ninth Circuit case law). "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r*

*of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

"[A]n ALJ may not disregard [a claimant's testimony] solely because it is not substantiated by objective medical evidence[.]" *Trevizo*, 871 F.3d at 679 (citations omitted). "While ALJs obviously must rely on examples to show why . . . a claimant['s] [symptoms are inconsistent with the evidence in the record] . . . the data points they choose must *in fact* constitute examples of a broader development to satisfy the applicable 'clear and convincing' standard." *Id.* at 1018 (emphasis in original) (discussing mental health records specifically).

## 2. ALJ findings

Here, the ALJ acknowledged the two-step process for assessing Plaintiff's symptom testimony. AR at 31. The ALJ then stated, "[a]fter careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id.* The ALJ observed "that the claimant's assertions that she is nearly bed ridden and wholly dependent upon her children for purposes of dressing, bathing, and performing upwards of 95% of household chores, are not supported by objective clinical evidence provided by either treating or consultative sources." *Id.* at 32. The ALJ went on to point to three (3) treatment records in support of her finding. *Id.*

Plaintiff asserts that the Administration may "not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence dos not substantiate the degree of impairment-related symptoms alleged by the individual." Opening Br. (Doc. 18) at 9–10 (citing SSR 16-3p). SSR 16-3p goes on to state that "[a] report of minimal or negative findings or inconsistencies in the objective medical evidence is one of the many factors we must consider in evaluating the intensity, persistence, and limiting effects of an individual's symptoms." SSR 16-3p, 2016 WL 1119029 (March 16, 2016). Defendant provides

extensive citations to the administrative record, which he contends support the ALJ's findings. Response (Doc. 20) at 10–11. This Court, however, is "constrained to review the reasons the ALJ asserts . . . [and it would be error] to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss." *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (citations omitted). The discrepancies that the ALJ cites are appropriate grounds for discrediting Plaintiff's symptom testimony, but the ALJ did not rely on them. Because the Court found legal error in the ALJ's omission of Plaintiff's hepatic cirrhosis diagnosis, *see* Section III.B., *supra*, it also finds it appropriate to direct the ALJ to reconsider Plaintiff's symptom testimony.

### D. *Treating Physician Testimony*

"As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (citing *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)); *see also Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). "The opinion of a treating physician is given deference because 'he is employed to cure and has a greater opportunity to know and observe the patient as an individual.'" *Morgan v. Comm'r of the SSA*, 169 F.3d 595, 600 (9th Cir. 1999) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987) (citations omitted)). "The ALJ may not reject the opinion of a treating physician, even if it is contradicted by the opinions of other doctors, without providing 'specific and legitimate reasons' supported by substantial evidence in the record." *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (citing *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)); *see also Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007); *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Embrey*, 849 F.2d at 421 (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)). Additionally, "[a] physician's opinion of disability 'premised to a large extent upon the claimant's own account of his symptoms and limitations' may be disregarded where those complaints have been 'properly discounted.'"

*Morgan*, 169 F.3d at 602 (quoting *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989) (citations omitted)).  Similarly, "[a] physician's opinion can be discredited based on contradictions between the opinion and the physician's own notes." *Buck v. Berryhill*, 869 F.3d 1040, 1050 (9th Cir. 2017) (citing *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)).  "[T]he more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."  20 C.F.R. § 404.1527(c)(4).

In light of the Court's decision regarding the ALJ's failure to consider hepatic cirrhosis, *supra*, the Court will direct the ALJ to reconsider her findings regarding Dr. Maric's testimony.

### E.   Remand

A federal court may affirm, modify, reverse, or remand a social security case.  42 U.S.C. §405(g).  "'[T]he decision whether to remand the case for additional evidence or simply to award benefits is within the discretion of the court.'" *Rodriguez v. Bowen,* 876 F.2d 759, 763 (9ᵗʰ Cir. 1989) (*quoting Stone v. Heckler,* 761 F.2d 530, 533 (9ᵗʰ Cir. 1985)). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004) (*citing Harman v. Apfel,* 211 F.3d 1172, 1178 (9ᵗʰ Cir. 2000)).  Conversely, remand for an award of benefits is appropriate where:

> (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Benecke,* 379 F.3d at 593 (citations omitted).  Where the test is met, "we will not remand solely to allow the ALJ to make specific findings. . . . Rather, we take the relevant testimony to be established as true and remand for an award of benefits." *Id*. (citations omitted); *see also Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).  "Even if those requirements are met, though, we retain 'flexibility' in determining the appropriate remedy." *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014).

Here, the ALJ committed legal error in failing to address Plaintiff's hepatic cirrhosis

diagnosis. It is not clear from the record that the ALJ would be required to find the claimant disabled. As such, the Court finds that remand on an open record is appropriate in this case. The ALJ is instructed to reassess Plaintiff's symptom testimony, the treating physician testimony, and account for all medical diagnoses in her analysis. The Court expresses no view as to the appropriate result on remand. In light of the foregoing, the Court finds that the ALJ's decision shall be reversed and the case remanded for further proceedings consistent with this decision.

## IV. CONCLUSION

In light of the foregoing, the Court REVERSES the ALJ's decision and the case is REMANDED for further proceedings consistent with this decision.

Accordingly, IT IS HEREBY ORDERED that:

1)      Plaintiff's Opening Brief (Doc. 18) is GRANTED;

2)      The Commissioner's decision is REVERSED and REMANDED; and

3)      The Clerk of the Court shall enter judgment, and close its file in this matter.


Dated this 20th day of September, 2019.

Honorable Bruce G. Macdonald
United States Magistrate Judge